IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                        Case No. 06-40056-01/02-SAC

JOSEPH LEE ALLEN and
KENNETH EUGENE ALLEN, JR.,

           Defendants.

## MEMORANDUM AND ORDER

This case comes before the court on defendant Joseph Lee

Allen's motion to join co-defendant's pretrial motions (Dk. 25), and

defendant Kenneth Eugene Allen, Jr.'s motions to sever (Dk. 30) and to

suppress identification (Dk. 31).  The government has responded.  The

court conducted an evidentiary hearing on June 22, 2006, and took the

motions under advisement.  Having reviewed the evidence admitted at that

hearing as well as the relevant law and the pleadings, the court is ready to

rule.

**Motion to join co-defendant's pretrial motions** (Dk. 25)

Defendant Joseph Lee Allen has moved to join his co-defendant's motions.  The government has responded that it "does not oppose this motion, to the extent that the defendant can establish standing to join in such motions."  Dk. 27, p. 4.  The court grants this motion.

**Motion to suppress identification**

Defendant Kenneth Eugene Allen, Jr. seeks an order of suppression of the out-of-court identification and any in-court identification by Mary Cavens,[1] alleging that there was "an overly suggestive photographic lineup procedure."  Defendant contends that the process was unreliable because the use of mug shots was "automatically prejudicial," and the photographs depicted persons insufficiently similar to defendant.

**Facts**

Ms. Cavens was a bartender at Scottie's Bar and Grill on December 19th, 2005, when it was allegedly robbed by both defendants.

---

[1]No challenge is made to the identifications made by Mr. Cavens. Nonetheless, because defendant's primary challenges are to the content of the photographs, the court will consider defendant's arguments to apply to the identifications made by both Mr. and Ms. Cavens.

2

Her husband, Delano, was also present and witnessed the robbery.

Ms. Cavens was shown two photo line ups.[2]  Each line up consisted of eight pages, with each page containing a front and a profile head shot of a person, which were mug shots.

The first photographic line up was shown to Ms. Cavens on December 22, 2005, by Detective Mark Finley of the Topeka Police Department.  He had called previously to set up the meeting and had told Ms. Cavens he had some suspects for her to look at.

He testified that he went to Ms. Cavens' house in the morning about three days after the robbery to get a written statement from her and to have her view the photo line up.  He took with him photographs of persons which he had compiled from an internet database which provides mug shots to law enforcement officers.  He had typed in the physical description of the defendants which he had obtained from statements Ms. Cavens had previously made to law enforcement officers, and had received a list of persons whose general appearance was similar to the defendants.  He then

_____

[2]Government's Exh. 1.

reviewed photographs of those persons and selected six of them to use in the line up, based upon their similarity of appearance to the defendants.  He printed color copies of these six persons' mug shots and color copies of both defendants' most recent mug shots to make the photographic array of eight persons which he showed to Ms. Cavens.  All were printed from the same computer printer on the same kind of paper.

At Ms. Cavens house, Mr. Finley told Ms. Cavens he had some photographs for her to look at.  He and Ms. Cavens sat at her dining room table, while Mr. Cavens sat out of sight on a couch in the adjacent living room, approximately 15-20 feet away.  Mr. Finley said little to her.  He did not tell her either suspect was or was not in the packet, did not say she had any obligation to identify anyone and did not instruct her to state the degree of certainty in the event she made an identification.  He displayed the photographs individually, laying them on the table one at a time.

Ms. Cavens viewed the photographs in less than one minute and "unequivocally" selected the photographs of both defendants as the assailants immediately upon seeing them.  She selected no other

4

photographs.  Detective Finley realized that she had selected the two

defendants, but did not tell Ms. Cavens so because her husband was close.

He did not have Ms. Cavens sign the photograph of either defendant at that

time.  Ms. Cavens was in a hurry to get to class so did not give a written

statement to Detective Finley.

Detective Finley then presented the photographs to Mr. Cavens

in the same manner he had shown them to Ms. Cavens.  Mr. Cavens

identified defendant Kenneth Allen, and hesitated at the photograph of

Joseph Allen but was not sure.  He did not identify any other photographs.

The second photographic line up was on January 31, 2006, by

F.B.I.  Special Agent Scott Gentine.  He testified that he had called Ms.

Cavens to set up a meeting at which he wanted to get a written statement

from her and to show her some photographs.  He took with him the exact

same photographs which Detective Finley had showed her.

When Agent Gentine arrived at Ms. Cavens' house, he sat with Ms. Cavens

at the table.  He showed her the photographs individually, one at a time, as

he held them in his hands, then let her take her time to review all of them.

He asked whether she had seen the photographs before, and she replied,

"Yes, with Detective Finley."  He asked whether she recognized anyone in

the photographs as part of the incident at Scotties Bar.  She then identified

the two defendants' photographs and no other photographs, and Agent

Gentine had her sign her name under the defendants' photographs.  He

testified that she did not equivocate at all in choosing the two defendants

and that it took her one minute, maximum, to identify the them.

On March 6, 2006, Agent Gentine presented a photographic

line up to Mr. Cavens.  He had made Xerox copies of the color

photographs, having removed Ms. Cavens' signatures and the printed name

of an individual which appeared on one photograph of an individual who is

not a defendant.[3]  He had also called Mr. Cavens to set up the meeting and

told him he had some photographs for him to look at to see if he could

identify anyone from the robbery. When they met in the parking lot of Mr.

Cavens' place of employment, Agent Gentine handed Mr. Cavens the

_____

[3]Government's Exh. 1D bears a name and other criminal identification
information printed across the top of the photographs on that page.  Defendant
does not contend that the presence of this information was a factor in any
identification of defendants.

Xerox copies.  Mr. Cavens reviewed them for one or two minutes then

unequivocally identified Joseph Allen and no other photographs.

      Both witnesses testified that they presented the photographs in

a neutral fashion and made no statements and took no acts intended to

influence the identification of any photograph on any occasion.  In short,

they did nothing to suggest that either defendant was involved in the crime.

**General law**

      Defendant has the initial burden to prove that the identification

procedure used in this case was impermissibly suggestive.

> In order to prevail on a claim of an unduly suggestive
> photographic lineup, a defendant has the initial burden of proving
> that the identification procedure was impermissibly suggestive.  *See*
> *United States v. Wade*, 388 U.S. 218, 240 n. 31, 87 S. Ct. 1926, 18
> L. Ed. 2d 1149 (1967).  It is only after the defendant meets this
> burden that the burden shifts to the government to prove that the
> identification was reliable independent of the suggestive procedure.
> *Id.*  It is only necessary to reach the second element of the inquiry if
> the court first determines that the array was impermissibly
> suggestive.  *See United States v. Sanchez*, 24 F.3d 1259, 1261-62
> (10th Cir. 1994).

*English v. Cody*,  241 F.3d 1279, 1282 -1283 (10th Cir. 2001).

      The Tenth Circuit has stated certain factors to be used in

determining whether a photograph array is impermissibly suggestive.

> Factors used to determine whether a photograph array is impermissibly suggestive include the size of the array, the manner of its presentation, and the details of the photographs. *Smith*, 156 F.3d at 1050.

*United States v. Knight*, 49 Fed. Appx. 215, 217, 2002 WL 31266115, *2 (10th Cir. 2002). Defendant does not challenge the size of the array, but challenges the manner of presentation, in part.

### Manner of presentation

During argument of the motion, defendant challenged the manner of presentation of the photographs. Specifically, defendant contends that the officers violated legally required procedures by failing to tell Mr. and Ms. Cavens that photographs of the robbers may not be included in the array and that they were not compelled to select anyone from the lineup. No legal support has been shown for defendant's assertion that these questions are required by decisional law and none has been found.

### Mug shots

Defendant next contends that using mug shots for identification

purposes is "automatically prejudicial."  All photographs shown to Mr. and Ms. Cavens were mug shots.  As with the issue above, defendant fails to provide any citation to law in support of this proposition of law.  Research has failed to uncover any precedent which has held that using mug shots for purposes of identification renders the identification procedure unduly suggestive.

Challenges to the use of mug shots usually arise when police photographs have been introduced as evidence or when explicit reference to them has been made before a jury.  *Compare*, *United States v. McCoy*, 848 F.2d 743, 746 (6th Cir. 1988) ("Mug shot evidence is prejudicial because it informs the jury that a defendant has a criminal record."); *with Holifield v. Davis*, 662 F.2d 710, 711 (11th Cir. 1981) (holding a witness' reference to "mug shots" unaccompanied by anything suggesting past criminal activity does not constitute prejudicial error, as the jury instruction that a defendant is presumed innocent dissipates any innuendo which could have been drawn from the use of the term "mug shots" standing alone).  Accordingly, the fact that the identifications were made

from "mug shots" in this case has not been shown to be prejudicial.  *See United States v. Wai Ho Tsang*, 632 F. Supp. 1336, 1340 (SDNY 1986).

### Impermissibly suggestive details

The primary issue in the present case is whether the photographs themselves were unduly suggestive.  Defendant contends that there were  characteristics in his photograph that would draw a witness' eye to his picture, or make it stand out from the others.  The government contends that the contents of the photographs were substantially similar because: each photograph was printed on about the same texture, type, and size of paper, and had same or similar backgrounds; each photograph was of a black man; and each person was similarly attired, was approximately the same age and had approximately the same body-build, head hair and facial hair.

Defendant Joseph Allen contends his hair and attire are distinctively different than that of the others in the photographs.  The court's review of the photographs confirms that defendant Joseph Allen's hair is significantly darker and somewhat longer than others.  However he

was not the only one in the lineup with any facial hair.  Others in the lineup

had varying degrees of facial hair and head hair such that no striking

dissimilarity between his appearance and that of others is evident.  As

stated by the Tenth Circuit:

> ...the fact that [the defendant] had more facial hair than the others was
> not unnecessarily prejudicial, especially in light of Detective Lee's
> warning to the witness that "hairstyles, beards, moustaches may
> easily change." *See United States v. Thurston*, 771 F.2d 449, 452-53
> (10th Cir. 19185) (finding identification procedure not unduly
> suggestive where defendant was the only one in six photographs to
> have a beard and whose hair was braided); *United States v. Shoels*,
> 685 F.2d 379, 385 (10th Cir.1982) (holding that a photographic
> array of men with facial hair, where the suspect had been described as
> without facial hair, was not unnecessarily suggestive), *cert. denied*,
> 462 U.S. 1134 (1983).

*United States v. Storey*, 1996 WL 532654, *2 (10th Cir. 1996).  Here,

defendant's facial hair and hairstyle[4] is substantially similar to those of the

other individuals depicted in the photographs.

Defendant Joseph Allen next notes that he is the only person

depicted wearing a coat or jacket.  He contends that his photograph,

showing him to be wearing what appears to be a heavy brown or black

---

[4]Although no warning was given in the present case that hairstyles and facial
hair may easily change, this is a matter of common knowledge.

leather coat or jacket, suggests that he was the individual involved in the robbery because the robbery occurred in the cold, early morning hours in December. The court finds this to be too great an inference. Absent evidence that the robber was wearing a similar coat during the robbery or that any witnesses had described the robber as having worn a similar coat, the fact that Joseph Allen is shown wearing a coat does not raise a reasonable inference that he was involved in the robbery. Many persons wear coats or jackets at other times and for other purposes, rendering his depiction in a coat or jacket insignificant.

### Previous identification

Defendants appear to contend that showing the witnesses the photographic lineups twice renders the second identification unreliable. The court agrees that viewing an *invalid* array may taint a witness' viewing of a subsequent array because the witness may be likely to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification. *See Simmons v. United States*, 390 U.S. 377, 383-384

(1968).  But the court has found the first array to be valid, rendering this line of authority irrelevant.

Certain testimony in this case could be construed to mean that during the second photographic lineup Ms. Cavens was asked to identity the photographs she had previously identified, rather than to make an independent identification.  But even assuming, arguendo, that this is so, Ms. Cavens' initial viewing and identification of both defendants is unquestionably untainted.  Further, the evidence shows that Mr. Cavens did not make his second identification based on his recollection of his first view of the photographs, since he identified only Kenneth Allen the first photographic lineup and identified only Joseph Allen during the second photographic lineup.  No suggestiveness has been shown by virtue of the fact that the witnesses were shown the photographic lineup twice.

### Conclusion

Having reviewed the size of the array, the manner of its presentation, and the details of the photographs, the court finds that defendant has failed to meet its burden to prove that the identification

procedure used in this case was impermissibly suggestive.  No evidence suggests that either witness was pressured or coached into selecting any of the pictures, or that the officers used any suggestive techniques to influence the witnesses.  The identifications were conducted separately, so that each witness was not influenced by other witness.  Each photograph was printed on about the same texture, type, and size of paper, and had similar backgrounds.  Each photograph was of a black man whose age and facial shape was approximately the same as defendants.  Each photograph shows a man who has a closely-cropped haircut or is bald. Slight but insignificant differences in head hair and facial hair are visible as to defendant Joseph Allen, and he is wearing a coat or jacket although no others are.  Nonetheless, there is a high degree of similarity among the eight men depicted, as well as among the eight photographs.  The array does not in any way draw suggestive attention to either defendant. Considering all of the circumstances, no basis for suppression has been shown.

**Motion to sever**

Defendant Kenneth Allen is charged with two counts, but his brother is charged in all four counts of the indictment.  Defendant Kenneth Allen alleges that separate trials are necessary because: 1) he is charged in only one of the two robberies; 2) evidence of his brother's involvement in another, similar, robbery is highly prejudicial; and 3) the jury will be unable to compartmentalize the evidence against him.  Defendant further contends that the spillover effect of the evidence cannot be prevented or cured by a limiting instruction.

The court notes only that under the circumstances of this case, severance may or may not be appropriate, and that this motion would be better decided at a date closer to trial, if any, of this case.

IT IS THEREFORE ORDERED that the motion to join (Dk. 25) is granted, that the  motion to sever (Dk. 30) is taken under advisement until a date closer to trial, and that the motion to suppress identification (Dk. 31) is denied.

Dated this 28th day of June, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

15